OPINION
Zuri Taylor is appealing from his conviction of one count of drug abuse following his no contest plea after his motion to suppress evidence was overruled.
Taylor brings the following sole assignment of error:
 THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS THE CRACK COCAINE DISCOVERED AS A RESULT OF THE ILLEGAL SEARCH OF APPELLANT'S HOTEL ROOM.
The facts of this case are fairly simple. While on routine patrol at night, in the vicinity of the Plaza Motel in the City of Dayton, Ohio, Officer Tolpin was flagged down by a male who identified himself as a resident of Columbus, Ohio, and told the officer: "I have made a horrible mistake." Tr. 3. He said the mistake he had made was that "he had geeked out his car for crack. He had just left the motel room or the motel, where the car was parked, in an attempt to make contact with the individual to whom he had, loosely speaking, contracted use of his car." Id.
Officer Tolpin explained at the hearing that "geeked out" is "street terminology for, in this case, an individual being in possession or owner of this vehicle gave, turned over the vehicle and keys and allowed it to be used for a specified period of time to another person in exchange for an undetermined amount of crack cocaine." Tr. 3-4. Furthermore, the officer acknowledged that it was not the first time he had been involved with "geeker transactions." Tr. 4.
The man who had flagged down the officer then pointed to a specific motel room and indicated the car parked in front of it was his car that he had "geeked out." Officer Tolpin then went to the motel room door, rapped on it, and identified himself as Dayton Police. Hearing no response, he went to an open window and shined his flashlight in seeing two people there. Again, he demanded someone come to the door, whereupon the defendant did come to the door and opened it. Officer Tolpin testified that: "Mr. Taylor opened the door. I explained to him that we needed to talk about the car that was parked out in front. I asked him if we could come inside to talk about it. He said, yes. We walked in the door." Tr. 7. That is the only evidence in the record about the officer's entry into the room. The court ruled from the bench that "the officers were admitted voluntarily to the room in question and that thereafter observations of items made in plain view support probable cause of the seizure in this case." Tr. 36. The court overruled the motion and followed with an entry which virtually repeated this ruling from the bench.
On appeal, Taylor, represented by counsel, argues that: "Even assuming that the court correctly found that appellant consented to the officers entering his room, Appellant never consented to the search of that room." Appellant's brief, 2-3. The seizure in this case was of a plastic baggie containing crack cocaine which a backup officer who had arrived at the scene, Officer Oney, saw in a shoe in plain view when he, Officer Oney, walked across the motel room in order to make sure there were no other persons hiding there. Specifically, Officer Tolpin testified as follows on cross-examination:
 Q. At what point did you go around to the other side of the bed?
A. When I was requested by Officer Oney to do so.
 Q. What was that officer doing on the other side of the bed?
 A. He went over to check inside the bathroom, see if anybody was hiding inside. Officer safety issue.
 Q. Okay. And the bathroom was toward the other side of the room?
A. Yes, it was. It is.
Q. Where were the sneakers located?
 A. Next to the bed on what would be the south side of the bed.
Tr. 24-25.
Both Officer Tolpin and Officer Oney testified that the motel location was a high crime area. Tolpin said: "Probably, I average, due to different types of criminal activity in the area and in the area of the motel and in the parking lot area, probably average about four to five arrests per month out of that location." Tr. 5. Officer Oney testified as follows:
Q. Have you been to the Plaza Motel prior to this?
A. Yes.
Q. Why were you there before?
 A. We get numerous calls out there for intoxicated people, warrants, criminal trespasses, prostitution, a variety of criminal acts.
 Q. So, it would be fair to say at that time you were concerned of commissions of that nature?
 A. At that time, I was concerned for officer safety.
Tr. 35-36.
Both officers were justifiably concerned with their safety in that location, and it was obviously reasonable for Officer Oney to walk across the room towards the bathroom, in the course of which he saw the contraband in plain view. We cannot find that Officer Oney's "search," if such it was, was constitutionally unreasonable.
The State raises for the first time on appeal the issue of whether Taylor had standing to assert his Fourth Amendment right against unreasonable searches and seizures. The State is aware of our decision that we will not address standing issues if they were not raised by the State at the trial court level. State v.Henderson (Nov. 7, 1997), Montgomery App. No. 16016, unreported. The States asserts, however, that the Supreme Court has held that the Court of Appeals does have discretion to address such issues "if the evidentiary basis upon which the court of appeals would decide a legal issue was adduced before the trial court and was made part of the record. See, State v. Peagler (1996), 76 Ohio St.3d 496, first syllabus." Appellee brief, 10. The State points out that Taylor was quoted by the officers as admitting that he was not the registered guest in that room and did not know who was the registered guest, and, therefore, evidence was adduced that Taylor would have no standing. However, since we are not determining this case on that issue, we need not address it.
The assignment of error is overruled.
The judgment is affirmed.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
Jeff R. Myers
Arvin S. Miller
HON. JOHN W. KESSLER